4090971 Illinois Department of Juvenile Justice v. The Illinois Civil Service Commission for the appellant, Mr. Resett. Is that the right pronunciation? That's right. I ask you that every time. For the appellate, Mr. Baker. You may proceed. Good morning, your honors. May it please the court, my name is Paul Resett. I'm an assistant attorney general for the state of Illinois Department of Juvenile Justice and its appeal. This is an administrative review action where the department seeks review of a decision of the Illinois Civil Service Commission that reduced the discipline for employee Josie Day from the discharge sought by the department to a mere 90-day suspension. The appropriate discipline is the sole issue that's present here today. The commission agreed with the department that the department proved the unauthorized tape recordings of fellow employees on two different occasions. Day did not seek administrative review of that finding. She accepted that the department proved the charges against her. In our view, the commission's decision to reduce the discipline from discharge to the 90-day suspension was unreasonable under the circumstances presented here. Here, Day violated the criminal eavesdropping statute twice, which is a felony, and she also committed conduct unbecoming of a state employee, engaged in the unauthorized use of state-issued property, and failed to respect confidential information. These are things that are in the department's regulations and in their administrative directives concerning employee behavior. Her behavior constituted a substantial shortcoming, rendering her continued employment with the department detrimental to the efficiency and discipline of that agency. The director of the department, her co-workers, and other employees at the department can no longer trust her, and they may be inhibited from speaking in her presence regarding either work or personal matters. Because she was a secretary in the executive offices of the agency, there was sensitive privilege and confidential information that was discussed in her presence. Her substantial shortcoming is also such that the law and sound public opinion would recognize as good cause for discharge here. The legislature views eavesdropping as a felony, and sound public opinion would certainly consider an employee who secretly records other employees' conversations to not be suited to remain in her position. In a thorough and thoughtful 15-page decision, the ALJ agreed with the department's position that discharge was the appropriate discipline here. The ALJ found Ms. Day's testimony not credible regarding the circumstances of the taping that she did at the meeting. It matters because the commission adopted all of the findings and conclusions of the ALJ, so in fact it made them its own. So it did not disavow that finding that the ALJ found that her testimony was not credible regarding the circumstances. She had said that she placed the tape recorder on the table on top of a planner or a binder in open sight of all the other attendees at the meeting. The other attendees at the meeting testified that she had concealed it in her purse, which she set on the table. And the ALJ found that her version was not credible, and that the version that she concealed the tape recorder in the purse was what in fact did occur. And the ALJ noted that these circumstances refuted her claim that she had a benign purpose in recording the meeting. She had offered various explanations, like she was trying to make sure that she didn't miss anything important, and that she thought that she would perhaps make minutes for a future supervisor. The superintendent of the school district position was vacant at that time, and she claimed one of the reasons was to make minutes of the meeting so that when that person was hired, they would know what happened at the meeting. However, she wasn't assigned to do that. She concealed the recorder in her purse, and after she was, after she left the workplace, they searched her workstation and could not locate any such minutes. Well, assuming you're correct about all this, the issue seems to be, given this bad behavior, what's the appropriate sanction? The ALJ thought firing was appropriate. The commission disagreed, and we have to conclude to agree with you that the commission's decision was unreasonable. That's right. It's a deferential standard, but that doesn't mean that it's no review. And in this case, we are arguing that it is arbitrary and unreasonable for several reasons. For one reason is that she committed criminal felonies at the workplace on two separate occasions. Another reason is that the commission's decision was inconsistent with another one of its decisions just a year earlier, with almost identical circumstances, with no explanation for why they reached a different conclusion. But why that, like trial judges, courts do things differently and come up with different decisions. I don't know. Even assuming that it was a different decision, why the court, no two cases are identical. It seems to me that the commission is called upon to evaluate the case before it can come up with appropriate sanction and determination, and that's where our focus ought to be. Well, I do think that when they're on all fours like these two cases are, they're in close proximity in time, that that does suggest that it's... You mean there was another case of someone who had recorded the people? Right. Under these circumstances? Exactly. Teresa Ralph was an executive secretary at the Illinois Department of Corrections, and she secretly recorded a system court, and the commission upheld her discharge. And the two reasons that the commission gave in this case for reducing the discipline, one of them clearly cuts in favor of the other person who was discharged, it was length of service. In that case, that secretary had worked at the Department of Corrections 18 years, where Day had only worked for 15 years. Also, that other secretary had 12 letters of commendation, where Day had none. It's true that that other secretary did have one minor disciplinary infraction, infraction where Day did not have any, but all their work records and length of service were basically equivalent. But in that case, the commission found that discharge was appropriate, but here they found that a mere 90-day suspension was appropriate with no explanation of the differences between the cases. And the ALJ relied heavily on the Teresa Ralph case in his decision, and the commission did not say one word about it or attempt to distinguish it. But aren't there differences in the actual context of these two cases? As I said, if anything, the facts are worse in this case. But even if they were equivalent, there should be the same discipline meted out in similar circumstances. Why? Why? Well, I mean, literally. Is there any requirement? Because it should not be arbitrary. Well, but the court is, or the commission is called upon to evaluate, think of the case before it. And, you know, this is kind of like, well, Judge, the last guy who you had, who broke in and gave him three years, and this guy shouldn't get two or four, he should get three as well. He was a sentencing judge for a long time, he was a trial judge, and I never saw two cases exactly the same. I would think, at least in that situation, that the onus would be on the commission to explain the difference. And as I say, I mean, this is almost like an abusive discretion standard, where it's highly deferential. But still, they have to show that it was not arbitrary, it was not unreasonable. And the other thing is that there are those cases that talk about how, if the commission wants to impose discipline other than what the ALJ recommends, it either has to reject some of its findings of fact, or find findings of fact that are inconsistent with the ones that the ALJ did, and the commission didn't do either of those things here. In two cases, they said that if the commission does that, that it's an unreasonable decision and irreversible. Well, they explained it. They said their decision cited the day's 15 years of continuous service with no prior discipline, and their conclusion that there was no evidence that the tape recording was premeditated, done with requisite intent of malicious, a requisite level of malicious intent. Right, I'll get to that second part in just a moment. Why isn't that an explanation? Now, the question isn't whether you agree with the explanation. The first point is, was there an explanation? It certainly appears to be one. But that explanation was contrary to the evidence that it adopted findings of fact that were inconsistent with that finding, so it really doesn't make any sense. But we're in the first part about 15 years, Teresa Ralph had 18 years. So, if someone who had more continuous service was found to be suitable for discharge, it makes no sense to say that someone with less has enough service to not be suitable for discharge. Regarding the premeditated, obviously the findings of fact that it adopted show that the ALJ believed that she snuck the recorder into the meeting in her purse. That was clearly premeditated. She made the conscious choice of bringing the recorder to the meeting. She also made the conscious choice of concealing it in her purse. Regarding the March 2008 incident where she was tape recording the conversation. But then, counsel, isn't this just a matter of the commission being sloppy about saying what it means? In effect, aren't they saying, yeah, we agree with the ALJ's findings except so far as to the requisite level malicious intent? Well, actually, in those earlier cases... Since they distinguish it in their ultimate conclusion. In those earlier cases that I talked about regarding what they have to do when they disagree, in those cases they did explicitly say, we adopt to the extent not inconsistent with our finding, and in those cases the appellate court said, no, that's not good enough. You have to either reverse specific findings or make your own that are inconsistent. However, here they didn't even do that. As you said, it was extremely sloppy. It's a one paragraph explanation on capital letters for some unknown reason. And they just say, based on her length of service, the fact that we don't think it was premeditated, even though there's plenty of evidence that it was premeditated. And then they say that she didn't have the requisite level of malicious intent. Well, apparently they're not alone in that. The state's attorney didn't charge her either, did he? Well, there are all sorts of factors that go into prosecutorial discretion. Well, one of them might be, do you think we can prove beyond a reasonable doubt the requisite level of malicious intent? Well, the statute doesn't require that. It's not an element of eavesdropping. I think under the facts here, she clearly met all the elements for eavesdropping. Perhaps the state's attorney decided to give her a pass out of the kindness of his heart. Perhaps he's too busy. Who knows why? But for whatever, there was an Illinois State Police investigation. And they found that it was serious enough, what occurred here, to refer it, at least, to the state's attorney for prosecution. And she really should be happy that she wasn't criminally prosecuted. But instead, she's insisting that she gets to keep her job. Now, regarding the requisite level of malicious intent, the ALJ found and the commission adopted that she did not have a benign purpose in recording the June 06 meeting.  She had no legitimate work-related reason to tape the meeting. So she must have been doing it for her own personal reasons. And the fact that she still had the tape in her possession two years later shows that she was likely saving it for some time when she could use it to her advantage. Regarding the March 08 taping of the co-workers, this was done at the same time that she was keeping that detailed log of all the workplace conversations, when people would go to the restroom, when they would eat cookies. She was clearly compiling some sort of evidence to try to get her co-workers in trouble. Let me ask this question. The recommendation was 90-day suspension in lieu of discharge. Does this mean that this worker day, when the suspension is up, is going to be going back? Is it indeed entitled to go back to the same position? I believe so. I'm not sure about things that have happened after the record was closed. But my understanding is that the Commission ordered us to just give her the 90-day suspension. The Circuit Court would not give us a stay. So I think that while this matter is pending, she's back. Mr. Baker could probably address that better because he's his client. So she's going to be back working with the same people under the same circumstances? In this very small office with these three other people that she does not get along with at all. I mean, apparently from the record, it's fairly vague on what happened. But apparently they all were friends at one point. They had a falling out. And then from that point on, anything that they did irritated her. So I mean, it's a very toxic environment now because these people have found out that she was recording them and trying to get them in trouble with supervisors, complaining to the union. And we think it would definitely be detrimental to the efficiency of the service because no one there can trust her anymore. The director can't trust her. The seven wards of the juvenile facilities that were recorded at the meeting can't trust her. And all the other clerical staff. And she is entitled to continue her position with the juvenile justice department? I believe so, your honor. She's a civil service employee and she's in a union. So I think that they're, I mean, and that's the thing. I mean, I wish that the civil service commission would take a step back and ask, would they be comfortable with this kind of person staying with them? It's very easy for them to be generous and stick the department with her. But or if the court could put itself in the department's shoes, if you find out that a when you were deliberating a case or even when just talking about what you did over the weekend, would you feel comfortable keeping that person in that employment position? And especially after they've done it twice. I suppose some people would, but it's understandable where many people would not be comfortable with that kind of breach of trust. If the court has no further questions, that's all my comments for now. Thank you. Good morning. May it please the court. My name is James Baker. I'm appearing this morning on behalf of Josie Day. The issue in this case really is pretty simple. It is whether the civil service commission uses discretion by imposing a 90-day suspension on this day rather than the discharge decision sought by her employer. I'd like to make two initial observations. The first observation is that even though Ms. Day's conduct may in a technical sense have violated state law, there is nothing in the personnel code, the rules of the Department of Central Management Services, the policies of the Department of Juvenile Justice or the department saying that conduct mandated her discharge. Do they have anything in their rules that say if you commit murder you might be fired? Probably not. So that's another oversight? I'm not saying that's an oversight, no. But what I'm saying is the department's position is that this is a bright line case. She engaged in this conduct and the only possible discipline is discharge. And the law doesn't say that. So rules don't say, and by the way, employee, don't go around committing felonies because you know it's bad form. Well, the rules do prohibit someone from engaging in criminal misconduct. That's clear. And Ms. Day never for a moment claimed she did nothing wrong. She never for a moment claimed she wasn't subject to discipline. The question here is discharge the appropriate penalty. The second observation is, and I noted Mr. Reset in his remarks at least three comments, three times commented on the discipline as a mere 90-day suspension. To a state secretary being suspended for 90 days, 25% of your annual income lost is not mere. It's a significant penalty. The Civil Service Commission took it seriously and imposed a significant penalty. In fact, it was 30 days. Can you imagine any private employer dealing with an at-will employee without the circumstance keeping Ms. Day unemployed? Is that conceivable to you? Yes, it is. So for instance, had this been your secretary at your law office who had recorded you and your associates or other paralegals, you'd say, you know, that's bad form and I'm going to suspend you for 90 days. But you're welcome back, sweetie. Depending upon the circumstances and the context in which the conduct occurred, I can see that happening. But it would take her back. In this case... Well, you know, I have to say, Mr. Baker, that answer strikes me as I'm expected to believe in the Easter Bunny and all kinds of other strange things. Because this is truly one of those moments when you're arguing the indefensible. No private employer would ever have this woman back again under any circumstances. Judge Steigman, I am a private employer and I respectfully disagree. I respect your right to disagree with me, but I see it otherwise. More importantly, five members of the Illinois Civil Service Commission who are entrusted to decide these types of cases and have the requisite expertise in Illinois personnel matters saw this a case justifying a 90-day suspension. What do you think they took into account? I think the primary consideration they took into account was the fact that she had worked 15 years in state service with not a speck of discipline. I also think they took into account the context in which these two recordings took place. The first recording occurred at a staff meeting. The staff meeting that was convened at the time the Department of Juvenile Justice was being separated from the Department of Corrections. And there is no evidence in this record that Ms. Day had any motive for recording that meeting other than to gather information relevant to her job. At the time that recording occurred, she had no boss. She was the secretary for the school board and the department was without a school superintendent. The only portions of the meeting she recorded, and the tape reflects this, are those portions that relate and were directed toward her area of work. In fact, the second day she didn't even bring the tape recorder to the meeting because school board business was not going to be on it. With respect to the March 2008 incident, I don't know that impulsive is a correct word to use, but this was a spur of the moment action on her part where she took a tape recorder she had been assigned by the department, placed it on her desk, and for a few seconds recorded noises. No conversations were recorded. Mr. Baker, this is an excellent defense of your client's position concerning her activities, all of which was apparently considered and rejected by the initial trier, in this case the ALJ. I'm reminded of trying to put the best possible spin on difficult facts, but if I remember correctly from what the ALJ wrote, none of this was accepted by the ALJ. You know what this comes down to, Justice Steikman? What's that? Is the same situation this court was presented with in the Reddy case, where an administrative law judge in a disciplinary proceeding wrote an extensive opinion where she cited a lot of mitigating reasons why Dr. Reddy should not be suspended. And the agency in a very cursory opinion disagreed and saw it otherwise. And what this court concluded, and I believe you were on the panel in that case, was that different people can take the same facts and can arrive at a different conclusion concerning the appropriateness of discipline. And in this case, it's not the administrative law judge, it's not the courts, it's not me, it's not the Attorney General's office, it's the Civil Service Commission who was entrusted by law to make that call. And it did. And it explained, at least as satisfactory as the Department of Professional Regulation did in the Reddy case, why it made the call it did. Sixteen years ago, I ran for the appellate court, was elected, and I ran against the young men who had been for several years a research clerk in this court, who during the course of the campaign revealed a memo that had been circulated internally within this court. I was elected, and subsequently charges were brought against him by the ARDC, and the Supreme Court disbarred him. Were they wrong? Without knowing any more about the facts, I would have to say no, they were not wrong. But the fact... That was pretty harsh. It wasn't a 90-day suspension. He didn't lose a quarter of his year's salary. He was barred from practicing the profession for which he had gone to law school, and he had been doing it for like five or six years. And the Supreme Court felt that was the appropriate penalty given the circumstances. For one memo on one time, as opposed to taping of your colleagues and superiors over a few occasions. No, not a few occasions. Two occasions. One occasion where there clearly was no malicious motive. And the other occasion, which was an impulsive act that lasted 30 seconds. And here is a distinction that I think need to be drawn, because we've heard, in this case from the Department of Juvenile Justice, that the decision of the Civil Service Commission in the Ralph case cannot be reconciled with the decision in this case. And we speak about the Ralph case extensively in our brief. The Ralph case is similar only in the sense that it involved an employee with no previous disciplinary history who engaged in a tape recording. The distinctions in the Ralph case are several. The first thing is the woman that did this was the executive secretary to a warden and had a confidential relationship. And I think either the administrative law judge or a witness on behalf of the Department of Corrections testified that that was the supreme breach of trust or the ultimate breach of trust. The second thing is she went out of her way to plan this. She went out and got a tape recorder. She then tested the tape recorder to make sure that from her desk she could record private conversations. The third distinction is she was clearly intending to record conversations which were private in an effort to trap her boss. Those are all significant distinctions from what we have here. And the Civil Service Commission said this case is different from Ralph and doesn't warrant that type of... I don't want you to go beyond the record, Mr. Baker, but based upon the record before, is my understanding correct that your client would be required to be, after the suspension, taken back by the Illinois Department of Juvenile Justice and essentially reinserted back into the same position she was in during the circumstances in which all this occurred? That is partly correct and partly incorrect. The record reflects that the Department of Juvenile Justice is required to assess a 90 day suspension other than a discharge. When she comes back to the Department of Juvenile Justice under state law, it's free to make appropriate job assignments provided that the job assignment does not violate a collective bargaining agreement or a particular civil service rule or statute. So yes, you are partially correct. So is there any reason to believe the Juvenile Justice Department is going to be able to move this woman out of the circumstances in which all this occurred? I don't think the record reflects that one way or another. There was no evidence offered by the Department that it could not. But here is the point that I think we have to make. If Ms. Day goes back and behaves in an inappropriate fashion, she can be disciplined. If she can't get along with co-employees because of her conduct, steps can be taken to deal with that. And meanwhile, there shouldn't be any problem with the people whom she taped and who were the subject of this in the past working with her just like nothing ever happened? You know, in state government, it happens all the time that people are required to work with one another that have issues between them. There's nothing in the record here that would suggest... Is that what the Civil Service Commission 115 years ago was designed to achieve to protect people who have issues? The Civil Service Commission's mission, as stated in the preambulatory portions of the record, was to create a personnel system based upon scientific methods, whatever that means. It's worked out well in this case, hasn't it, Mr. Pink? You know, in this case, the Civil Service Commission made a decision and it was its shot to call. I don't always agree with an umpire's call to balls and strikes when I watch the Cubs play, but that's their function. We may not agree with it. We may not like it. We may say if we were sitting in their shoes, we would decide it otherwise. But that's not our call to make. And merely because there may be some implication or some problem downstream because this woman comes back does not make the decision either arbitrary or unreasonable. I think I have completed what I wanted to say. If there are no other questions. Thank you, Counsel. Goodbye all. I just have a few comments in response to Mr. Baker's comments. He said that the tape recording of the June 2006 meeting was only about materials that were, or information that was relevant to today's job. But Smith, the Deputy Director of the Department, listened to portions of the tape and there was nothing on it regarding her position, either the school district or her other duties. Also, the tape recorder was not assigned to her by the department, but by a previous employer, the Department of Corrections. Mr. Baker said that he would be happy to have someone like this in his employ. He's certainly free to hire her, but that doesn't mean that we should be stuck with her. Regarding the Reddy case that he talked about a lot, in that case the Department of Professional Regulation did explain why it was reaching different discipline than the ALJ recommended. For one thing, it looked at sanctions in other cases and was trying to award sanction that was similar to what it had done in the past. Here, the commission had done that it would have discharged because in similar cases the year before it had discharged. Also, it differed with the ALJ and Reddy because of the grievous nature of the conduct, which was that the doctor got involved with a romantic relationship with a patient. Here, the commission did not say because the conduct was not serious, that's the reason we're going to reduce. They just simply reduced. Mr. Baker said there were only 30 seconds of recording of the March 08 conversations. It was actually several minutes. The first recording at the meeting was somewhere between 60 and 90 minutes of recording. Also, as Justice Steinman pointed out, the department is a very small agency. These four women are the only people that are in this office on a daily basis. Well, apparently, according to Mr. Baker, the commission is designed to protect people who might have issues. Right, so I mean, unless you'd be willing to go work at one of the juvenile facilities, because that's where most of the employees are, either on location at the juvenile facility or on the road traveling between them, I don't see how they could avoid having these four women in constant conflict. Unless the court has further questions, we ask that you reverse the commission's decision to the extent that it reduces the discipline and uphold the discharge that was recommended by both the Department of Central Management Services and the Department of Juvenile Justice. Thank you. Thank you, counsel. Thank you.